UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


CHRIS A. MARSH, DANIEL R. MARSH,

                    Plaintiff,

vs.                                    Case No.  2:09-cv-813-FtM-29DNF

BAC HOME LOANS SERVICING, LP, a
Texas Corp and subsidiary of Bank of
America, N. A., MORTGAGE ELECTRONIC
REGISTRATION   SYSTEMS,   INC.,   a
Delaware Corp., DRAPER AND KRAMER
MORTGAGE CORP, a Delaware Corp.,
JOHN DOES (1-10),

                    Defendants.
_____


### OPINION AND ORDER

     This matter comes before the Court on defendants BAC Home
Loans Servicing, L.P.'s and Mortgage Electronic Registration
Systems, Inc.'s Motion to Dismiss (Doc. #17) and defendant Draper
and Kramer Mortgage Corporation's Motion to Dismiss (Doc. #18).
Plaintiffs filed responses (Docs. ## 25, 27) to both motions.  The
Complaint asserts that defendants violated the Truth in Lending Act
(TILA) and the Real Estate Settlement Procedures Act (RESPA) in
connection with a home mortgage refinance loan.  For the reasons
set forth below, the motions are granted in part and denied in
part.

### I.

     In deciding a Rule 12(b)(6) motion to dismiss, the Court must
accept all factual allegations in a complaint as true and take them

in the light most favorable to plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007); <u>Christopher v. Harbury</u>, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." <u>James River Ins. Co. v. Ground Down Eng'g, Inc.</u>, 540 F.3d 1270, 1274 (11th Cir. 2008)(citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007)). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949. Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989); <u>Brown v. Crawford Cnty.</u>, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. <u>La Grasta v. First Union Sec.,</u>

<u>Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).  The Court may consider documents which are central to plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment.  <u>Speaker v. U.S. Dep't of HHS CDC</u>, 623 F.3d 1371, 1379 (11th Cir. 2010); <u>SFM Holdings, Ltd. v. Banc of Am. Secs. LLC</u>, 600 F.3d 1334, 1337 (11th Cir. 2010); <u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th Cir. 2005); <u>Maxcess, Inc. v. Lucent Techs., Inc.</u>, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).  Because Plaintiffs are proceeding *pro se*, their pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed.  <u>Hughes v. Lott</u>, 350 F.3d 1157, 1160 (11th Cir. 2003).

## II.

The Complaint sets forth the following allegations: Plaintiffs applied for and received a home mortgage refinance loan from defendant Draper and Kramer Mortgage Corporation (DKMC), an originator of mortgage loans.  (Doc. #1, ¶ 4.)  The loan was secured by a mortgage on real property located at 429 N W 5th Terrace, Cape Coral, Florida 33993 (the Property), which plaintiffs assert is their principal dwelling.  (<u>Id.</u>, ¶¶ 3, 12.)  The closing took place on July 26, 2007, (<u>id.</u>, ¶ 12), and at the closing plaintiffs received: (a) a promissory note, (b) a mortgage security instrument, (c) an occupancy affidavit, (d) one signed Final

Federal Truth in Lending Disclosure Statement and Itemization of Amount Financed, (e) two signed copies of the Notice of Right to Cancel, (f) a HUD-1 Settlement Statement, (g) A First Payment Information Letter, and (h) a copy of a Uniform Residential Loan Application with a HUD/VA Addendum. (Id., ¶ 13.)

Defendant Mortgage Electronic Registration Systems, Inc. (MERS) is an assignee of the loan "by virtue of its disclosed status as a 'Nominee for Lender, its Successors or Assigns" on the mortgage security instrument. (Id., ¶¶ 4, 6.) At some point after the closing, defendant BAC Home Loans Servicing, L.P. (BAC) was assigned an ownership interest in the loan.[1]  (Id., ¶¶ 5, 20.)

Plaintiffs assert that DKMC violated the TILA by failing to provide them with a sufficient number of copies of certain documents at the closing. (Id., ¶¶ 21-26.)  Specifically, plaintiffs assert that they were each, individually, entitled to receive two copies of the Notice of Right to Cancel (i.e., four copies total) and one copy each of the Federal Truth in Lending Disclosure Statement (i.e., two copies total), but were not given the proper number of each document. (Id., ¶¶ 23, 24.) Because of of this deficiency, plaintiffs assert that their three day right of rescission was extended to three years. (Id., ¶¶ 27, 28.)

---

[1]The Court accepts this fact as true at this stage of the proceedings, although it appears more likely that BAC merely services the loan. (Doc. #1, Exh. 2.)

On September 1, 2009, plaintiffs sent an Actual Notice to Rescind and a Qualified Written Request (Notice) to Bank of America Home Loans, BAC's parent company.[2]  (Doc. #1, ¶29; Exh. 2.) In the Notice, plaintiffs requested that BAC rescind the loan and invalidate the security instrument, identify the true owner of the promissory note, provide a full accounting of their loan, cease collection of the loan, and cease imposition of finance charges and other fees.  (Id.)

On September 24, 2009, Bank of America responded, on behalf of BAC, that it had reviewed the information provided by plaintiffs and the loan would remain in "full force and effect."  Bank of America provided plaintiffs with copies of their loan documents and a Loan Transaction History Statement.  (Doc. #1, ¶31; Exh. 3.)  BAC refused to acknowledge the rescission or provide the information requested, and continued to request payment and impose finance and other charges.  (Id., ¶¶ 33-36.)

On December 17, 2009, Plaintiffs filed this action seeking rescission and actual and statutory damages.  In Count 1, plaintiffs allege violation of TILA and its regulations as to BAC only, and seek rescission and damages.  In Count 2, plaintiffs allege violation of TILA and its regulations as to all defendants,

---

[2]Bank of America Home Loans has not been named as a defendant in this action.

and seek damages.  In Count 3, plaintiffs allege violation of RESPA against BAC only and seek damages.

### III.

### A.   Count 1: Claim for Rescission And Damages Against BAC

Count 1 alleges a violation of TILA and Regulation Z, and seeks rescission of the note and damages against BAC as an assignee.  Plaintiffs allege that DKMC failed to provide clear and conspicuous effective rescission notices and material disclosures at the closing, which entitles plaintiffs to rescind the transaction with the assignee, BAC.  Plaintiffs further assert that they did rescind the transaction by proper notice, which extinguished their liability to BAC for finance and other charges, and triggered a twenty day period in which BAC had to refund or credit all monies paid and to void the security interest in the property or seek judicial guidance.  Plaintiffs assert that BAC failed to respond within twenty days, failed to credit the account and invalidate the security instrument, and continued to impose finance charges and fees, which was wrongful and gives rise to statutory and actual damages.

Defendant BAC seeks dismissal of Count 1 because, it argues, Count 1 fails to state a claim upon which relief may be granted. Defendant argues that because plaintiffs admit they received actual written notice of the right to rescind, there can be no valid rescission even if not enough copies of the notice were provided.

Defendant argues that the actual notices provided to plaintiffs, even if technically deficient, negate plaintiffs' claim for rescission.  (Doc. #17, pp. 3-5.)

With certain exceptions not relevant to the motion, there is an absolute right to rescind a credit transaction if the transaction is (1) a consumer credit transaction; (2) in which a security interest is or will be acquired or retained in property; and (3) the property is used as the principal dwelling of the person to whom credit is extended.  15 U.S.C. § 1635(a).  For purposes of the motions, there is no dispute that the mortgage refinance loan transaction in this case qualifies under this criteria.  Thus, plaintiffs had a statutory right of rescission.

The absolute right to rescind, however, does not last forever.  Rather, the consumer must exercise his or her right to rescind by midnight of the third business day following the later of two triggering events: (1) the consummation of the transaction; or (2) the delivering of information and rescission forms required by 15 U.S.C. § 1635 together with a statement containing the material disclosures required by 15 U.S.C. §§ 1601-1667.  15 U.S.C. § 1635(a).  Within this time period, the consumer/obligor must notify the creditor, in accordance with the regulations of the Board of Governors of the Federal Reserve System, of his or her intent to rescind.  Id.

-7-

The transaction in this case was consummated at the July 26, 2007 closing. Plaintiffs allege they provided notice of rescission on or about September 1, 2009. The right to rescind clearly had expired when measured against the first triggering event, the consummation of the transaction.

The second triggering event is delivery of the information and rescission forms required by 15 U.S.C. § 1635 together with a statement containing the material disclosures required by 15 U.S.C. §§ 1601-1667. 15 U.S.C. § 1635(a). The creditor is required to "clearly and conspicuously disclose" the right to rescission "in accordance with regulations of the [Federal Reserve] Board." 15 U.S.C. § 1635(a).[3] Under Regulation Z, the "creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." 12 C.F.R. § 226.23(b)(1). The Staff Commentary states that where joint owners, such as husband and wife, give a security interest in their home, each person has the right to rescind the transaction. 12 C.F.R 226, supp. I, ¶23(a)(4). The Staff Commentary goes on to specify that **each**

_____

[3]"Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth-in-lending law." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 566 (1980). The Board has promulgated a group of regulations designed to implement TILA called Regulation Z. Additionally, the Board's staff periodically issues interpretations of TILA and Regulation Z through the Official Staff Commentary to TILA (the Staff Commentary), which are dispositive unless they are demonstrably irrational. Milhollin, 444 U.S. at 565.

spouse must receive "two copies of the rescission notice . . . and one copy of the disclosures."[4]  12 C.F.R 226, supp. I, ¶23(b).

The Complaint alleges that despite the existence of a written acknowledgment signed by plaintiffs to the contrary, the creditor (DKMC) failed to provide *each* borrower with two notices of the Right to Cancel and one copy *each* of the Federal Truth in Lending Disclosure Statement and Itemization of Amount Financed at the closing.  A reasonable inference is that plaintiffs assert they have never received the proper number of copies.  Therefore, the second triggering event for the commencement of the three-day rescission period never occurred, and the three day period in which to exercise the absolute right of rescission never started.

This statutory extension of the three-day period, however, also does not last forever.  The right to rescind expires, even if the required disclosures and documents are never provided, (1) three years after the date of consummation of the consumer transaction, or (2) when the property is sold.  15 U.S.C. § 1635(f).  There is no allegation that the dwelling has been sold,

---

[4]The "disclosures" means the disclosure of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title.  See 15 U.S.C. § 1602(u).  The Federal Truth in Lending Disclosure Statement and Itemization of Amount Financed, at issue here, constitutes such a "disclosure" under TILA.

and the September 1, 2009, notice provided by plaintiff was within this three year window from the date of the closing.

For purposes of the motion to dismiss, BAC does not dispute that plaintiffs received only two copies of the Notice of Right to Cancel and one copy of the disclosure statement between them. Rather, BAC argues that TILA does not require "perfect notice" but only "clear and conspicuous notice" of rescission rights. BAC argues that the notice given to plaintiffs, although perhaps imperfect, was sufficient to negate the right to rescind.

The Court disagrees. Plaintiffs had an absolute right to rescind within three days even if perfect notice was provided. The existence of imperfect notice serves to extend the three day period, not to impose conditions on the otherwise absolute right to rescind. Nothing in the statute or regulations allows a court to terminate the right to rescind upon imperfect notice. Indeed, the statute and regulations implicitly reject such an argument.

BAC relies on an unpublished Ohio state court case, <u>Contimortgage v. Delawder</u>, No. 00CA28, 2001 WL 884085 (Ohio Ct. App. July 30, 2001)[5]. In <u>Delawder</u>, the court stated that even if the requisite number of notices was not delivered to the borrowers, "these problems constituted mere technical violations of TILA" and although the bank "may have only provided [borrower] with one copy

_____

[5]Defendant erroneously refers to this as a decision by the Ohio Supreme Court; it was decided by an intermediate Ohio appellate court.

of the 'Notice of Right to Cancel between them in violation of Section 226.23(B)(1), Title 12, C.F.R., that notice nevertheless 'clearly and conspicuously' indicated that they possessed a right of rescission." 2001 WL 884085 at *3.

The Court finds <u>Delawder</u> unpersuasive. First, <u>Delawder</u> is an unpublished decision which is not binding on this Court. Second, the case was decided after a bench trial, and not in the context of a motion to dismiss. Third, the <u>Delawder</u> court does not address the Staff Commentary discussed above, which is directly on point and entitled to great weight unless "demonstrably irrational." <u>Milhollin</u>, 444 U.S. at 565; <u>see also</u> <u>Buick v. World Sav. Bank</u>, 637 F. Supp. 2d 765, 770-71 (E.D. Cal. 2008)(relying on official staff commentary and holding that co-borrowers are each entitled to receive separate sets of disclosures); <u>Rojo v. U.S. Bank N.A.</u>, No. 09-C-0229, 2010 WL 1292280 at *3 (E.D. Wis. March 29, 2010)(same). Finally, the Eleventh Circuit has acknowledged that violations of TILA's disclosure requirements are governed by an objective standard, and a consumer who has not actually been deceived may nevertheless seek relief under TILA. <u>Rodash v. AIB Mortg. Co.</u>, 16 F. 3d 1142, 1145 (11th Cir. 1994), <u>abrogated on other grounds</u>, <u>Veale v. Citibank, F.S.B.</u>, 85 F.3d 577 (11th Cir. 1996).

Plaintiffs have sufficiently stated a claim for rescission under TILA, Regulation Z against BAC.[6]

Plaintiffs have also stated a claim in Count 1 for rescission-based damages, including finance charges and fees which have been accruing since September 1, 2009, the date they sent their notice of rescission.[7]   Should plaintiffs prove that they validly exercised their right to rescind against the appropriate party, they would be entitled to seek actual and statutory damages arising from the defendant's failure to rescind in a timely manner.   15 U.S.C. §§ 1635(b), 1640(a)(1), 1640(a)(2)(A)(iv).   The applicable one-year statute of limitations for rescission-based damages begins to run 20 days after defendant receives the notice of rescission. See Frazile v. EMC Mortg. Corp., 382 F. App'x 833, 839 (11th Cir. 2010)(acknowledging that one-year statute of limitations for damages action arising from inadequate response to notice of rescission runs from 20 days after defendant receives notice); see also Smith v. Am. Fin. Sys., Inc., 737 F.2d 1549, 1552 (11th Cir.

---

[6]BAC does not dispute plaintiffs' allegation that it was assigned an ownership interest in the obligation.   If true, under 15 U.S.C. § 1641(f), plaintiffs could seek rescission from BAC for DKMC's disclosure violations.

[7]BAC conflates rescission-based damages and disclosure-based damages.   (Doc. # 17.)   Rescission-based damages arise after a borrower has sent a valid notice of rescission to the appropriate party and that party has failed to rescind the mortgage transaction, as required by 15 U.S.C. 1635(b).   Disclosure-based damages arise at the consummation of the transaction and, in this case, are time-barred as discussed later herein.

1984)(holding that failing to rescind when a debtor is entitled to rescission is a separate "violation" under the act, triggering the one-year limitations period of § 1640(e) and entitling the debtor to monetary damages under § 1640(a)). Here, plaintiffs allege that they sent their notice of rescission to BAC on September 1, 2009. Plaintiffs filed this action on December 17, 2009, within the one-year period for rescission-based damages.

Accordingly, BAC's motion to dismiss plaintiffs' claim for rescission and damages under TILA in Count 1 is denied.

**B.  Count 2: TILA Claim for Disclosure-Based Damages**

In Count 2 plaintiffs assert a claim for recoupment of statutory and actual damages under TILA, Regulation Z, as to all defendants. Plaintiffs seek damages arising from DKMC's failure to provide a sufficient number of copies of the Notice of Right to Cancel and TILA Disclosure Statement prior to or at the closing.

Unlike plaintiffs' rescission-based damages claim in Count 1, plaintiffs' disclosure-based damages claim is time barred. Under 15 U.S.C. § 1640, a creditor may be liable for damages to plaintiffs under 15 U.S.C. § 1638 for failure to make the appropriate disclosures. Disclosure-based damages accrue at consummation of the transaction, and the applicable statute of limitations is one year from the date of the violation. 15 U.S.C. § 1640(e). Here, the alleged non-disclosure violation occurred on July 26, 2007, the date of the closing. See Frazile, 382 F. App'x

at 838 (holding that a TILA non-disclosure violation occurs at time of closing).  Clearly, the one year time limitation passed well before this case was filed on December 17, 2009.  TILA is subject to equitable tolling in certain special circumstances, Ellis v. GMAC, 160 F.3d 703, 708 (11th Cir. 1998), but the necessary conditions are not alleged to have been present in this case. Accordingly, Count 2 will be dismissed.

**C.  Count 3: RESPA Claim Against BAC**

Count 3 alleges that as a servicer BAC violated RESPA by failing to make appropriate corrections to plaintiffs' account in response to the QWR and Rescission Notice and failing to transmit written notice of such corrections to plaintiffs; refusing to cease its collection efforts after receiving the QWR and rescission notice; failing to provide the requested information and documents; and by providing information to consumer reporting agencies regarding overdue payments.

RESPA imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally related mortgage loan.  12 U.S.C. § 2605.  Among those duties is the obligation to respond to a Qualified Written Request (QWR) submitted by a borrower.  12 U.S.C. § 2605(e).  Under RESPA, a QWR is defined as follows:

> [A] qualified written request means a written correspondence (other than notice on a payment coupon or other payment medium supplied by the servicer) that includes, or otherwise enables the servicer to identify,

the name and account of the borrower, and includes a statement of the reasons that the borrower believes the account is in error, if applicable, or that provides sufficient detail to the servicer regarding information relating to the **servicing** of the loan sought by the borrower.

12 U.S.C. § 2605(e)(1)(B)(emphasis added). Upon receipt of a QWR, RESPA requires servicers of federally related mortgage loans to take certain actions:

[T]he servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A). Additionally,

[n]ot later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any [QWR], the servicer shall:

A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

-15-

> > (C) after conducting an investigation, provide the
> > borrower with a written explanation or clarification that
> > includes--
> >
> > > (i) information requested by the borrower or
> > > an explanation of why the information
> > > requested is unavailable or cannot be obtained
> > > by the servicer; and
> > >
> > > (ii) the name and telephone number of an
> > > individual employed by, or the office or
> > > department of, the servicer who can provide
> > > assistance to the borrower.

12 U.S.C. § 2605(e)(2)(A)-(C). A violation of any of the provisions of § 2605 entitles an individual to seek:

> "any actual damages to the borrower as a result of the
> failure; and any additional damages, as the court may
> allow, in the case of a pattern or practice of
> noncompliance with the requirements of this section, in
> an amount not to exceed $1,000."

§ 2605(f)(1). Thus, to state a claim for violation of RESPA § 2605(e), plaintiffs must allege facts showing that: (1) defendant is a loan servicer, (2) plaintiffs sent defendant a valid QWR, (3) defendant failed to adequately respond within the 20/60 day statutory period, and (4) plaintiffs are entitled to actual or statutory damages. 12 U.S.C. § 2605; See Frazile v. EMC Mortg. Corp., 382 F. App'x 833, 836 (11th Cir. 2010)(holding that damages allegation is a necessary element of any claim under § 2605); see also Allen v. United Fin. Mortg. Corp., 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009)("Although [12 U.S.C. § 2605(f)(1)] does not explicitly set this out as a pleading standard, a number of courts

have read the statute as requiring a showing of pecuniary damages in order to state a claim.")(citations omitted).

Here, plaintiffs allege that BAC is a loan servicer and that plaintiffs sent BAC a QWR on September 1, 2009. Plaintiffs attach the QWR to the Complaint and incorporate it by reference. Plaintiffs further allege that BAC responded to the QWR, but assert that the response was inadequate. Finally, plaintiffs allege that they suffered actual damages in the form of late charges and penalties, as well as negative marks on their consumer credit reports. Plaintiffs also allege that they are entitled to statutory damages because BAC has engaged in a "pattern or practice" of noncompliance with RESPA, but fail to allege any facts in support of that allegation.

BAC argues that the notice sent to them by plaintiffs does not qualify as a valid QWR under RESPA. While it identifies the "name and account of the borrower" it does not "include[] a statement of the reasons that the borrower believes the account is in error" or "provide[] sufficient detail to the servicer regarding information relating to the servicing of the loan sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(emphasis added).

The Court has reviewed the notice sent by plaintiffs and agrees with BAC. Nothing in the notice indicates that there was a problem with the servicing of the loan (e.g., the way BAC received plaintiffs' scheduled periodic payments due under the loan). See

-17-

<u>Vasquez v. M&T Bank Corp.</u>, No1:10-cv-23794, 2011 Wl 241958 (S.D. Fla. Jan. 24, 2011)(dismissing RESPA §2605(e) claim because QWR failed to state an error in the servicing of the loan); <u>see also</u> <u>Chevy Chase Bank, F.S.B. v. Carrington</u>, No. 6:09-cv-2132, 2010WL745771 (M.D. Fla. Mar. 1, 2010)(same). All of the statements made in the notice that pertain directly to the loan are about the disclosures (or lack thereof) provided at closing, not the servicing. The only statement in the notice which can reasonably be construed as relating to the servicing of the loan is that plaintiffs dispute the "outstanding principal balance" due under the loan. This bare assertion does not provide the servicer with "sufficient detail" as to why plaintiffs believe the balance is incorrect.[8] In any case, BAC responded to plaintiffs and attached a Loan Transaction History Statement which outlines the principal balance, payments received and other charges assessed and paid.

Thus, plaintiffs' complaint and attached exhibits establish that the notice plaintiffs sent to BAC does not qualify as a QWR. Thus, amendment of the RESPA § 2605(e) claim would be futile, and Count III is dismissed with prejudice.

Accordingly, it is now

**ORDERED:**

---

[8]Additionally, the Court notes that plaintiffs' allegation that BAC violated RESPA by not identifying the "true owner" of the obligation is inaccurate. This obligation arises under TILA, not RESPA. <u>See</u> 15 U.S.C. § 1641(f)(2).

    1.  Defendant Draper and Kramer's Motion to Dismiss (Doc. #18) is **GRANTED,** and Count 2 as to Draper and Kramer Mortgage Corp. is dismissed with prejudice.

    2.  Defendants BAC Home Loans Servicing, L.P. and Mortgage Electronic Registration Systems, Inc.'s Joint Motion to Dismiss (Doc. #17) is **DENIED** as to Count 1 and **GRANTED** as to Counts 2 and 3, which are **DISMISSED WITH PREJUDICE.**

    3.  The Clerk shall withhold the entry of judgment until the conclusion of the case but terminate defendants Draper and Kramer Mortgage Corp.

    **DONE AND ORDERED** at Fort Myers, Florida, this __29th__ day of March, 2011.

                                             JOHN E. STEELE
                                           United States District Judge

Copies:
Counsel of record